**OWNER–OPERATORS INDEPENDENT DRIVERS ASSOCIATION OF AMERICA, INC., Appellants,**

v.

**COMMONWEALTH of Kentucky, Kentucky Transportation Cabinet, Appellees.**

**No. 91–CA–2023–MR.**

Court of Appeals of Kentucky.

Feb. 26, 1993.

Marie Alagia Cull, David H. Vance, Alagia, Day, Marshall, Mintmire & Chauvin, Frankfort, Patrick J. Coyne, Daniel J. Harrold, D. Hamilton Peterson, Paul D. Cullen, K. Michael O'Connell, Collier, Shannon & Scott, Washington, DC, for appellants.

James R. Cox, Lisabeth Hughes Abramson, Hirn, Reed, Harper & Eisinger, Louisville, Patricia K. Foley, Transportation Cabinet, Frankfort, for appellees.

Before GARDNER, HAYES[1] and HOWERTON, JJ.

HAYES, Judge:

This appeal is from a summary judgment upholding the constitutionality of KRS 281.650 against the claim that it imposes an unreasonable burden on interstate commerce and violates the equal protection clause of the 14th Amendment. A careful review of this difficult and complex case

---

**1.** This opinion was circulated and concurred to prior to Judge Hayes' resignation on February 1, 1993. Release of the opinion was delayed by normal administrative handling.

convinces us that the trial judge properly resolved the question of undue burden on interstate commerce. However, we are likewise persuaded that a factual issue precludes entry of summary judgment upon the equal protection claim.

KRS 281.650 is part of a comprehensive scheme of regulation of motor carriers that operate within the Commonwealth of Kentucky. Prior to operating in this commonwealth, all motor carriers are required to obtain a permit from the Department of Vehicle Regulation of the Transportation Cabinet. KRS 281.615. "Motor carrier" is defined in KRS 281.011(1) as "any person who owns, controls, operates, manages or leases, except persons leasing to authorized carriers, any motor vehicle for the transportation of persons or property for hire upon any highway." Under KRS 281.-610(1), these requirements apply to carriers engaged in interstate and intrastate commerce. A $25.00 application fee must be paid when the carriers first apply for a permit and thereafter, $25.00 is charged for each annual renewal. KRS 281.650. The fee schedule was held unconstitutional as applied to carriers regulated by the Interstate Commerce Commission (ICC) in a related action. This action challenges the constitutionality of the statute as to ICC-exempt carriers.

Briefly stated, Congress in enacting 49 U.S.C. § 10101 et seq., the Motor Carrier Act, exempted certain classes of carriers from its provisions, the purpose of which was to relieve small operators, businesses and farmers of the burden and expense of complying with the federal regulations required by the Act. In 1965, Congress attempted to bring some uniformity to the area of state regulation of ICC permits by enacting 49 U.S.C. § 11506, which declared in part: "When a registration requirement imposes obligations in excess of the [ICC] standards, the part in excess is an unreasonable burden." ICC regulations set limits upon the procedures regulated carriers must follow to register their permits and certificates in the various states and, in particular, 49 CFR § 1023.13 (1987) makes reference to the fees a state may charge, limiting the initial application fee to $25.00

and the renewal fee to $10.00. Appellants argued unsuccessfully to the Franklin Circuit Court that imposition of the $25.00 renewal fee upon ICC-exempt interstate carriers constitutes an unreasonable burden on interstate commerce and is a violation of their constitutional right to equal protection of the law.

In their appeal to this Court, appellants contend that the trial judge failed to discern the fine distinction in their undue burden argument between claims based upon federal law and claims centered in the Commerce Clause itself. We disagree. We find no error in the trial court's analysis of the federal law and the conclusion that the federal statutory scheme simply does not reach the exempt carriers. The intent of Congress seems purposely drawn so as to place ICC-exempt carriers under aegis of state regulatory systems. And, analyzing the undue burden claim in a larger context, we are convinced that the fact that a state regulatory scheme charges slightly higher renewal fees for exempt carriers than for ICC-regulated carriers raises not a Commerce Clause question but one of equal protection.

With regard to equal protection, we once again concur in Judge Graham's analysis of the issue presented. Citing *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985), for the proposition that if a state's purpose is legitimate no equal protection violation occurs when the extra burden imposed by the state is rationally related to that purpose, the trial judge posed the pivotal issue as follows:

> Thus the question becomes under the *Metropolitan Life* case and other federal authority whether there is a rational basis for distinguishing between ICC-regulated carriers and ICC-exempt carriers for purposes of the challenged renewal fee.

Where we part company from the trial judge is in his summary disposition of this issue. Given the fact that the evidence before the trial court consisted of conflicting affidavits concerning the administrative

procedures for handling permits for ICC-exempt carriers and ICC-regulated carriers, we are persuaded that a genuine factual dispute exists precluding entry of summary judgment on the equal protection issue. It may well be that upon remand the trial judge may resolve the issue in identical fashion, but we are firmly of the opinion that appellants are entitled to fully explore and test the basis upon which the Commonwealth justifies the disparate treatment of exempt and regulated carriers and to attempt to prove their theory of "improper post-hoc rationalization" in full-blown adversarial context.

The judgment of the Franklin Circuit Court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

All concur.